Good morning, Your Honors. I'm Emanuel Rios for the petitioner, Ms. Garcia. This is – I'd like to reserve two minutes for rebuttal. You'll have to watch your time there. Thanks, Your Honor. This is an appeal from the Board of Immigration Appeals, and the issue in this case is whether or not a stop-time provision founded in the Immigration Nationality Act, Section 240, AD 2, can be applied retroactively to the petitioner's departure from the United States that occurred in 1989. May I just ask straight off, since your time is limited, how do you distinguish your case from Jimenez Angelis? Well, Your Honor, this case can be distinguished between – from Jimenez Angelis because Jimenez Angelis was a surrender case where, really, the petitioner in that case had no legitimate expectations because of the prosecutorial discretion by the INS. Anybody can turn themselves into the INS. However, whether or not the INS acts on it and when the INS acts on it, that doesn't give you any kind of legitimate expectation that you'll be placed in one proceeding or another. So in Jimenez Angelis, she surrendered to the Immigration Service before April 1st, 1997, which means that she would hope that she'd be placed in deportation proceedings rather than removal proceedings. However, the INS has the ultimate prosecutorial discretion, and there's no challenges to that. That's 242 – Section 244 – 242G. And so that was the issue, was prosecutorial discretion. So there's no settled expectations. Just by simply surrendering yourself, that you'll be placed in one proceeding or another. She tried to argue the quid pro quo that she turned herself in, and she saved the government expense. And based on that detrimental reliance, that she should be placed into – excuse me – deportation proceedings and be allowed to apply for suspension of deportation relief, as opposed to cancellation of removal relief, which is much more stringent. However, there really were no settled expectations, and the Court realized that. They distinguished it from St. Cyr by the fact that St. Cyr's plea bargain, the act of plea bargaining, and entering into a plea agreement, preserved his right in the law at the time. And that's what our case has. Our case has a brief departure in 1989, and when she returned from that, she preserved her right at the – in the law at the time. And that's where the difference is. And that's why, actually, Jimenez-Angeles is for the petition. Excuse me, Your Honor. What was her right at the time? Well, underneath the law at the time, Your Honor, that continuous physical presence was not automatically destroyed after – unless the departure was considered to be something other than brief, casual, and innocent. So you're saying that she had a settled expectation and a right that they could not change the 10-year or 7-year continuous residency, that they could only be prospective. Once somebody had entered, and then, even though she departed for five months after being here for about a year, she was under the stop clock regime that was then in existence. And that couldn't be applied because she had a settled expectation that if she left the country up to five months or whatever, she would always be able to show that it met the – it wasn't per se, didn't restart the clock. Is that – that's your argument? Well, that is my argument, Your Honor. Okay. Can you cite any case law to support your argument? Well, I believe that the statute itself supports the argument, Your Honor. The Supreme Court's analysis in Landgraf supports the argument that if there's no temporary mandate by the statute, and the statute has a retroactive effect of making the pre-enactment conduct subject to the new statute has a retroactive effect, then it simply can't be applied. Well, in a sense, the request for relief of cancellation doesn't arise until she's subject to being deported, which is after the date of the enactment. So I'm having – I have a little trouble with the whole Landgraf analysis here. Well, Your Honor, what our position is, is the disability attached in the implementation of the law to something that happened before underneath a different law. So people know, or aliens know, that they can get, through continuous physical presence, some kind of status here in the United States at a future date. They conduct themselves accordingly. They know that they can't leave for a certain amount of time or for a long amount of time, and they conduct themselves accordingly. Based on that, they're preserving their rights. Maybe I misspoke earlier, saying that they were entitled to rights. In fact, they're preserving their rights to this kind of relief. And that's the same kind of thing that St. Cyr did when he entered into a plea agreement. He's not guaranteeing his right. He's preserving his right. And this is what this is about. Well, in St. Cyr, when he entered his plea, there was a chance that he could get suspension from deportation, right? That's correct, Your Honor. And then the law was changed so that the offense he pleaded to precluded that. That is correct. How is your case similar to that? Well, our case is similar to that in that there's a preservance of rights. It's based on the preservance of rights, not the fact that they're entitled to it or that they became eligible at a certain time. The fact that when she left and she came back shortly after, she preserved her right to maintain her continuous physical presence. This case is really about the interpretation of continuous physical presence. And throughout the ages, throughout the immigration law, there's always been some kind of avenue for long-term illegal residents to adjust their status through the registry program, through the amnesty program, through suspension of deportation, and now through cancellation of removal. There's always been an avenue. And the touchstone for these is continuous physical presence. Aliens know that and they conduct themselves accordingly. And so by leaving and for a short period of time and coming back, she preserved her right underneath, through a continuous physical presence argument, to keep her status here in the United States, Your Honor. That's the argument. Thank you. What's your argument with respect to the jurisdictional question? We've gotten a supplemental opinion here from the Second Circuit, but I gather the government argues that you should have administratively exhausted your remedies with the Bureau before you came to us. Sure. I understand that argument, Your Honor. It's basically a constitutional retroactivity argument, Your Honor. So in administrative proceedings, they're not the administrative agency doesn't have the power to rule on constitutional issues. It would be futile for them to bring it up beforehand. Therefore, for futility reasons, there's no reason to bring them before, Your Honor. The Petitioner in this case did bring an argument arguing that the immigration judge abused his discretion and therefore preserved the fact that she appealed and she's going to keep going on this, as opposed to the case cited in the 28J motion by the Respondent where the Petitioner in that particular time gave up his rights altogether and said, okay, I accept your order as final, Your Honor. So therefore, I think that there could be a – there's a factual difference between the case at VAR where she preserved her appeal, knowing that she could always bring this later on, as opposed to someone who gave up all their appeal rights at the first instance, Your Honor. Okay. If there are no other questions, I'll reserve the rest of my time for rebuttal. All right. Let's do that. Thank you. Welcome back. Do you want to state your appearance? Thank you, Your Honor. Anthony DeCasso represents the Respondent. Thank you. Because Petitioner did not exhaust her administrative remedies when she failed to raise her retroactivity claim to the board, the Court lacks jurisdiction over this case. How is that so? Isn't what the counsel just said dispositive? The board can't adjudicate constitutional claims. Well, Your Honor, if it was a pure constitutional claim in the aspect that the board does not review those things, then I would say that that's certainly within the realm of this Court's purview. But in retroactivity, as the Supreme Court looked at in St. Cyr and as this Court has looked at in Jimenez Angeles and a few of the other cases where it looked at So while it may have some constitutional underpinnings, it is a statutory construction issue that the board can certainly review and has reviewed in the past as its duty to be the agency interpretation. The statute is pretty clear on its face as to what it says. And as to the issue whether it's impermissibly retroactive, I don't really see how the BIA can act on that. It's a constitutional issue. It's not just a straight construction of the statute. Well, it certainly has some constitutional underpinnings. But just as an ineffective assistance of counsel claim is a pure constitutional issue under the Due Process Clause in immigration hearings, the board routinely decides those issues. So as long as it has a mechanism to decide that type, it's not really a strict prohibition against constitutional issues. There are some areas where the board may be able to decide it. But I don't think under our precedent that the Petitioner can't raise it to us here because of the theory that they haven't exhausted. Well, that's why 28J, the Second Circuit case. You're right, Your Honor. I'm unable to find a particular case that addresses the direct issue of retroactivity and whether it needs to be exhausted under the statutory requirement to exhaust it. Well, I would just suggest you get to the other issues. Thank you, Your Honor. Because it may be, if we don't like the Second Circuit's approach. Yes, sir. You may be in the merits here. Thank you, Your Honor. Applying the Landgraf test, if you have to apply both parts, you obviously start with the first part of the Landgraf test. Can I just get you to do that? I think it may be helpful if you focus on this one point, at least from my standpoint. You have the notion under Landgraf and, to some extent, St. Cyr, about the ability to conform your conduct to the requirement that is ultimately applied to you. Now, in this case, under a regime where somebody who has entered the country and is dependent upon maintaining a continuous presence, and the regime that's in extant during a large portion of that time gives the immigrant the opportunity to argue that their departures were brief, casual, and the like, and later on it gets substituted for essentially a per se test. If you go out, that interrupts it. Wouldn't you say that that's a classic case where someone has not had the rule of law and, therefore, it's a paradigm case for nonretroactivity? How's that for a loaded question? Well, Your Honor, I think at the time that she left in 1989, unlike the St. Cyr case, there was no settled expectations. There was no quid pro quo. There was nothing that she had settled on in that particular time, whereas, as we know in St. Cyr, the petition in that case gave up some significant constitutional rights in return for a plea bargain. And then, as the Supreme Court looked in St. Cyr, had at least a reasonable chance to get some relief under former 212c. In this particular case, she had nothing in her hand when she left. So that St. Cyr talks about a negotiated plea. I understand that. Right. But St. Cyr doesn't, unless you're arguing it, it sets the outer limits of retroactivity. The landscrap itself looks, as part of its analysis, and says that ability to conform conduct is a critical part of the inquiry. How can somebody conform their conduct? In other words, if I knew that if I departed from the United States, I'd start the clock all over again, wouldn't that affect my behavior, as opposed to a regime that says, I may need to go south because I've got to deal with family problems or whatever? Wouldn't that affect one's behavior? It might. But certainly, at the time that she left, she still had to fulfill the old Hoovey doctrine of brief, casual, and innocent departure. But in looking at this case, it's almost like it's not almost a retroactivity issue, because, as Judge Gould pointed out, the, the, the, the, the, the, the, the statute did not change. I mean, she entered after the statute had changed. I mean, it's governed by the permanent rules particular case. And if you look at this Court's precedent in Ram, when it looked at another section of the statute, that is the continuous 10-year physical presence, not the termination of that period of time, that was a transitional rule case. And in that particular time, Ram said, you have no settled expectations in a transitional rule case that the law would change and that somehow, you know, the stop time rule wouldn't affect you. In this particular case, it's clearly a permanent rules case. So it would be unusual for Congress to intend two different things within the statute, especially in the statute that is clearly applicable in this particular case, the permanent rules case. So it's even a stronger case than was the issue in Ram deciding the stop time rule on the same particular statute, albeit another subsection of it. The facts in this case are uncontroverted and simple. She entered the United States in May of 88. She left in April of 89. She returned after five months in September of 89. She was served a notice to appear on October 1998. As such, the immigration judge was correct in that she did not have the 10 years' continuous physical presence under the law. And this Court should at least give Chevron deference to that particular determination if they find that the exhaustion argument does not carry the particular day in this case.  Thank you. Thank you. You want to address Ram and its ramifications? Sure. I'd like to address Ram, Your Honor. This case is totally different from Ram. Ram, as counsel noted, was decided underneath the transitional rules. And that's what the actual transitional rules are what brought Section 240AD1, which was decided upon in Ram. It's a companion stop time rule into the ambit of being applied retroactively. In fact, the rule, the transitional rule, 309C5A, states unequivocally that the stop time rule found at 240AD1 can be applied to NTAs or OSCs, the charging documents and immigration proceedings, issued on, before, or after. That's unequivocal language. It's a mandate by Congress. That's what makes the Ram case under a transitional rule different from a permanent rule case such as what we have here. And, indeed, counsel has admitted this is a permanent rule case. Therefore, the transitional rules do not apply to this case. That's what takes this out of the ambit of Ram. Excuse me. Additionally, I would state that, you know, Congress knows how to make laws retroactive, as illustrated by the words on, before, or after in the transitional rules in other places in the statute, such as the aggravated felony provisions. And by not doing so under 240AD2, the section of the statute that's at issue here, it should be applied prospectively only. The government argues that the Court should give deference to the administration, the agency that administers this law. However, this Court has rejected that same argument, Ian Castro-Cortez, when it applies to applying the Act, a new Act to pre-Act conduct. The Court, in fact, said it's unconceivable that the Court, that Congress had given the Attorney General the discretion as to when to implement the new rules when Congress itself had done that through the complicated transitional rules that they set forth. Therefore, I'd – therefore, deference to the agency's interpretation is not appropriate in this case, Your Honor. Okay. Thank you. Thank you. We appreciate the argument of counsel. The case that's argued is submitted. We'll move to the next case, Medina-Morales v. Ashcroft.
judges: Dw Nelson, Fisher, Gould